UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JULIE BRASHEAR,

      Plaintiff,

  v.

PACIRA PHARMACEUTICALS,
INC., et al.,

      Defendants.

Case No. 1:21-cv-700

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Plaintiff Julie Brashear allegedly suffered partial paralysis of her diaphragm and experienced long-term breathing troubles after receiving an Exparel shot to manage her pain following shoulder surgery. (Am. Compl., Doc. 26). Based on that alleged harm, Brashear has sued the manufacturer of Exparel, Defendant Pacira Pharmaceuticals, Inc., (Pacira), and two related corporate entities, Defendants Pacira Pharmaceuticals International, Inc., (PPI), and Pacira BioSciences, Inc., (PBI), raising three distinct products liability claims against each. Defendants have now moved to dismiss Brashear's Amended Complaint—all three seek dismissal on the merits, while PPI and PBI also argue that the Court lacks personal jurisdiction over them. (*See* Docs. 34, 35, and 36).

For the reasons provided below, the Court concludes that, on the record properly before it at this stage, the Court has personal jurisdiction over all parties, but that Defendants succeed on their arguments directed to the merits. The Court therefore **GRANTS IN PART AND DENIES IN PART** PPI's and PBI's Motions to

Dismiss (Docs. 35, 36) and **GRANTS** Pacira's Motion to Dismiss (Doc. 34). Moreover, because Brashear has failed to make out any viable products liability claims for the second time, the Court **DISMISSES** the action against all Defendants **WITH PREJUDICE**.

### BACKGROUND[1]

In November 2019, Brashear had her shoulder surgically replaced, for which she received an Exparel injection to ease her resulting pain. (Doc. 26 ¶¶ 10–12, #200). Allegedly because of this injection (and not due to her later-developed pneumonia), Brashear claims she suffered paralysis of her diaphragm, which led to long-term breathing issues. (*Id.* ¶¶ 14, 17, #200–01). Brashear claims Defendants, as the alleged designers and developers of Exparel, knew that this injury was a substantial risk of receiving an Exparel injection and that they had a duty to warn her or her physicians about this risk. (*Id.* ¶¶ 13, 15–16, #200–01). PPI and PBI dispute Brashear's allegation that they took part in the production of Exparel and have both submitted declarations from employees declaring that neither "develop[ed], produce[d], design[ed], market[ed], manufacture[d], or suppl[ied]" Exparel. (Doc. 35-1, #350; Doc. 36-1, #369).

---

[1] As this matter is before the Court on Defendants' motions to dismiss, the Court generally must accept the well-pleaded allegations in the Amended Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). For that reason, when relying on those allegations to recount the case's background, the Court reminds the reader that they are just that—allegations. That said, PPI and PBI have moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2). In reviewing such motions, the Court may consider the evidence the parties have submitted related to issues of jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). As explained, the Court does not do so. But it flags for the reader the relevant declarations from PPI and PBI as to the proper scope of their involvement here.

For her injuries, Brashear sued Pacira, PPI, and PBI on November 8, 2021, raising four products liability claims (including, as relevant here, a failure-to-warn claim, a false marketing claim, and a supplier liability claim) as well as a nominally labeled punitive damages claim. (Compl., Doc. 1). Pacira (the only defendant Brashear had served at the time) moved to dismiss the Complaint, (Doc. 5), and the Court granted that motion, (Doc. 19). But the Court dismissed Brashear's failure-to-warn, false marketing, and supplier liability claims without prejudice, thereby providing her an opportunity to replead those claims if she could address the Court's concerns. (*Id.* at #176; 10/12/23, 2:37 PM, Not. Order (granting in part Brashear's Motion for Nunc Pro Tunc Order, (Doc. 22))).[2]

Eventually,[3] Brashear filed her Amended Complaint. (Doc. 26). In it, she re-raised her failure-to-warn, false marketing, and supplier liability claims adding allegations referring to Defendants' knowledge of the risks allegedly associated with Exparel as well as the actions she claims they should have taken. (Doc. 26 ¶¶ 18–44, #201–04). The Amended Complaint contains no attachments and does not refer to any documents outside the pleadings. This time around, Brashear also successfully served PPI and PBI. (Docs. 30, 31).

---

[2] The Court originally dismissed the failure-to-warn claim with prejudice. (Doc. 19, #176). But Brashear asked the Court to reconsider that order, claiming that she could provide additional allegations that would plausibly allege that the manufacturer had newly acquired safety information about Exparel that would have allowed it to initiate the CBE process. (Doc. 22). So the Court granted leave to replead that claim, as well, by amending the prior dismissal language to be without prejudice. (10/12/23, 2:37 PM, Not. Order). As discussed below, the Court concludes that Brashear has failed to make good on that representation.

[3] Brashear failed to comply with the Court ordered timeline for filing an amended complaint. (*See* 12/7/23 Not. Order; 2/7/24 Not. Order).

Defendants each moved to dismiss the Amended Complaint. PPI and PBI both moved to dismiss under Rule 12(b)(2) claiming the Court lacked personal jurisdiction over them. (Doc. 35, #340–44; Doc. 36, #359–63). And they argued in the alternative that the claims should be dismissed under Rule 12(b)(6) because Brashear's claims were barred by the statute of limitations and otherwise did not state plausible claims for relief. (Doc. 35, #344–47; Doc. 36, #363–66). In support of their personal jurisdiction arguments, PPI and PBI both attached declarations from employees disclaiming any responsibility for any part of the Exparel production process. (Doc. 35-1, #350; Doc. 36-1, #369). Pacira, on the other hand, moved to dismiss solely under Rule 12(b)(6) contending that Brashear's Amended Complaint is defective for the same reasons that led the Court to dismiss her original Complaint. (Doc. 34, #243). Brashear opposed all three motions, (Docs. 39, 40, 41)—attaching unauthenticated screenshots of websites (to support her newly raised alter-ego theory in support of the Court's exercising personal jurisdiction over PPI and PBI) and a case study nowhere referenced in her Complaint to buttress her allegations about Defendants' learning of new risks of Exparel. (Docs. 39-1 to -3, 40-1 to -3, and 41-1). Defendants then replied. (Docs. 44, 45, and 46). The matter is now ripe.

**LEGAL STANDARDS**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

4

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up). But while well-pleaded allegations are accepted as true, they are just that—allegations.

A court analyzing a motion to dismiss under Rule 12(b)(6) generally must confine its review to the pleadings. *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). That said, it may properly consider public records or decisions of public agencies, even on a motion to dismiss. *J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 86 (6th Cir. 2007). And if "a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Com. Money Ctr., Inc. v. Ill. Union Ins.*, 508 F.3d 327, 335–36 (6th Cir. 2007); Fed. R. Civ. P. 10(c). "These written instruments are records falling within a narrowly defined class of legally significant documents on which a party's action or defense is based. As a result, they often create or define legal rights or obligations, or define or reflect a change in legal relationships." *Anderson v. ABF Freight Sys., Inc.*, No. 1:23-cv-278, 2024 WL 51255, at *9 (S.D. Ohio Jan. 4, 2024) (cleaned up). "Even so, a court will not credit a document attached to a motion to dismiss [or other briefing] that is not integral to or referenced in the complaint, or is otherwise unlike quintessential examples of written instruments—for example, when the exhibit is unsigned and undated (i.e., lacks self-verifying qualities)." *Washington*

5

*v. City of Cincinnati*, No. 1:23-cv-230, 2024 WL 474403, at *2 (S.D. Ohio Feb. 7, 2024) (cleaned up).

By contrast, a motion to dismiss under Rule 12(b)(2) for want of personal jurisdiction is governed by a slightly different standard. For challenges to personal jurisdiction, "[t]he plaintiff bears the burden of establishing that [such] jurisdiction exists." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The nature of the burden turns on how the Court chooses, in its discretion, to handle the motion. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020). Before trial, a court may decide to resolve the question on the written submissions, to permit additional discovery, or to hold an evidentiary hearing. *Id.* If an evidentiary hearing is held, "the plaintiff may not stand on [her] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction" by a preponderance-of-the-evidence standard. *Theunissen*, 935 F.2d at 1458, 1465. But if the Court "rules on written submissions alone, the burden consists of a *prima facie* showing that personal jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (cleaned up). And a plaintiff may rely on just her allegations to meet that prima facie burden. *Malone*, 965 F.3d at 505. In other words, when the Court opts not to hold a hearing, it rules on a Rule 12(b)(2) motion without consideration of any affidavit or declaration contradicting those jurisdictional allegations. *Id.*

## LAW AND ANALYSIS

Because three motions are pending, a roadmap is in order. PPI's and PBI's identical motions raise both personal jurisdiction and merits arguments. Pacira's

motion, by contrast, addresses just the merits. Under black letter law, "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Morgeson v. Freeman*, No. 1:23-cv-269, 2024 WL 1406105, at *3 (S.D. Ohio Apr. 2, 2024) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007)). So the Court turns first to PPI's and PBI's personal jurisdiction arguments before any other issue. Given the Court finds Brashear has made out a prima facie case that the Court has personal jurisdiction over PPI and PBI, it then turns to the merits. Conveniently, PPI and PBI both adopt and concur with Pacira's merits briefing. (Doc. 35, #346–47; Doc. 36, #365–66). So the Court resolves the merits of the claims against all three Defendants in one fell swoop.[4]

**A. Personal Jurisdiction**

Begin with personal jurisdiction. Personal jurisdiction comes in two flavors: general and specific. As all appear to concede, (Doc. 35, #343; Doc. 36, #361–62; *see* Doc. 39, #383; Doc. 40, #406), the Court lacks general personal jurisdiction over Defendants PPI and PBI, as neither is "at home" in Ohio, (Doc. 26 ¶¶ 3–4, #199). *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). So what about specific personal jurisdiction? PPI and PBI raise only a single argument about why the Court lacks specific personal jurisdiction over them: their employees' declarations establish that they did not engage in any act in this matter that relates

---

[4] Though PPI and PBI also raise statute-of-limitations arguments, the Court declines to address them because Brashear fails to state a claim for relief. *Courser v. Mich. House of Representatives*, 831 F. App'x 161, 180 (6th Cir. 2020).

7

to the forum state of Ohio. (Doc. 35, #344 ("To the extent plaintiff has attempted to plead allegations that would satisfy the requirements of specific jurisdiction, those allegations do not pass muster in light of the evidence presented here that Pacira BioSciences did not develop, produce, design, market, manufacture, or supply EXPAREL® either in Ohio or anywhere else."); Doc. 36, #362–63 (same)).

That argument does not work under the correct legal standard. For starters, PPI and PBI have not requested an evidentiary hearing and oppose granting Brashear additional discovery on personal jurisdiction. (Doc. 45, #463–64; Doc. 46, #472–73). Accordingly, the Court uses its discretion to rule on personal jurisdiction based on the written submissions. *Malone*, 965 F.3d at 505. But that "choice of procedure ma[kes] [PPI's and PBI's respective declarations] irrelevant," as all Brashear must do is meet her prima facie burden with the allegations in her Amended Complaint. *Id.* PPI's and PBI's suggestions to the contrary are meritless as they cite the wrong standard—the standard that applies when the Court holds an evidentiary hearing. (Doc. 35, #344; Doc. 36, #362–63). So PPI's and PBI's sole challenge to the Court's exercising specific jurisdiction over them at this stage of the litigation lacks support.[5] And that means the Court may reach the merits of Brashear's claims

---

[5] Because PPI and PBI made only one argument about personal jurisdiction based on declarations the Court may not consider, they have forfeited any other challenge they could have raised—including that Brashear failed to meet her prima facie burden in her Complaint. That said, the Court notes that while her allegations on this front are rather thin, there is enough there for it to conclude that her action arises from PPI's and PBI's alleged actions connected to the forum state of Ohio. *Third Nat'l Bank in Nashville v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (noting the key inquiry is whether the defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there" (citation omitted)). For example, Brashear alleges PPI and PBI

8

against them. Thus, the Court denies PPI's and PBI's motions to dismiss insofar as they contend that personal jurisdiction is lacking here (i.e., when moving under Rule 12(b)(2)), as their sole argument turns on evidence not properly before the Court.[6]

## B. The Merits

Next up is whether Brashear's three products liability claims—her failure-to-warn, false marketing, and supplier negligence claims—plausibly state claims for relief. The Court had earlier dismissed each for various reasons: it found that (1) the failure-to-warn claim was preempted by federal law given Exparel and its labeling had been approved by the Food and Drug Administration (FDA), (Doc. 19, #167–70); (2) the marketing claim identified no representations (outside the label) on which Brashear relied, (*id.* at #170–72); and (3) the sole basis for her supplier liability claim appeared to be Exparel's purported dangerousness, which was preempted by the

---

participated in the development and production of Exparel—the drug administered to her at Mercy Health Anderson Hospital in Hamilton County, Ohio, thereby purportedly causing her injuries in this state. (Doc. 26 ¶¶ 6, 10, 12, #199–200). And Brashear points to PPI's and PBI's alleged failures to provide certain warnings on the product they purportedly produced and to notify Brashear's physicians of certain risks, which omissions caused her harm, again in this state. (*Id.* ¶¶ 25, 33, 43, #202–04). Taking these allegations in the light most favorable to Brashear (and especially because PPI and PBI do not argue to the contrary), the Court finds that Brashear carried her burden (if barely). *See Arnold v. CooperSurgical, Inc.*, 681 F. Supp. 3d 803, 815–18 (S.D. Ohio 2023). Simply, the allegations admit (with some squinting) of plausible inferences that PPI and PBI engaged in tortious actions with a direct and serious impact in the state of Ohio, where Exparel was distributed to local medical facilities. *Id.*; *see* Ohio Rev. Code § 2307.382(A)(3). The Court might have reached a different outcome had PPI and PBI raised different arguments in their motions—but under the party-presentation principle, the Court is not in the business of making arguments for parties even if the Court finds the litigation choices "odd." *Gray v. Winton Woods City Sch.*, No. 1:23-cv-553, 2024 WL 2882645, at *3 (S.D. Ohio June 7, 2024) (citing *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020)).

[6] Because the Court rejects the sole basis for PPI's and PBI's arguments related to personal jurisdiction, it does not reach Brashear's non-pleadings-based argument about those entities' being alter-egos of Pacira. (Doc. 39, #382–83; Doc. 40, #405–06).

9

FDA's approving the drug for distribution, (*id.* at #173–74). The same preemption[7] principles leading the Court to dismiss those claims once before now require the same result again.

### 1. Failure-to-Warn Claim

Start with the failure-to-warn claim. In it, Brashear attacks the Exparel warning label. She alleges Defendants learned of new risks associated with Exparel injections such that they should have changed the drug's warning label to notify patients of the potential for diaphragm or lung injuries like those Brashear experienced. (Doc. 26 ¶¶ 20–23, #201–02). As the Court explained in its prior opinion, because drug labeling is controlled by federal laws and FDA regulations, state law causes of action are preempted if it is impossible for a manufacturer to meet its state law duty of care and its federal obligations. (Doc. 19, #164). This means most failure-to-warn claims are preempted because drug labeling is highly federally regulated. Relevant here, once the FDA approves a drug label, as it did for Exparel in 2018, (Doc. 26 ¶ 20, #201), the label can be modified in only two ways: the manufacturer's seeking approval from the FDA directly or using the "Changes Being Effected" (CBE) process to make changes without waiting for approval. *Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578, 581 (6th Cir. 2013).

---

[7] Brashear indirectly re-raises her previously rejected argument that the Court cannot analyze preemption at the motion-to-dismiss stage. (*See* Doc. 41, #428 (arguing that it should be resolved after discovery)). Preemption is a legal question that can and should be resolved as early in the litigation as possible, as plaintiffs "are not entitled to discovery on preempted claims." *Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 673 (S.D.N.Y. 2017).

Brashear cannot rely on the first route—Defendants' failure to seek approval from the FDA to alter the label to add other risks—as a basis for alleging a viable Ohio law failure-to-warn claim. (Doc. 26 ¶ 22, #202). That is because Defendants' duty to seek FDA approval of its labeling (and changes thereto) is established by *federal* law via authority the FDA exercises under the Federal Food, Drug, and Cosmetic Act of 1938 (FDCA). FDCA § 502, 21 U.S.C. § 352; 21 C.F.R. § 314.70(b). And "'[t]he FDCA leaves no doubt that it is the Federal Government rather than private litigants who [is] authorized to file suit for noncompliance' with its substantive provisions." *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 578 (6th Cir. 2013) (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001)). So "under principles of implied preemption, private litigants may not bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violating the FDCA." *Id.* at 579 (cleaned up). Simply, "[i]f the claim would not exist in the absence of the FDCA, it is impliedly preempted." *Id.*

Applying those principles here, it becomes clear that Brashear's failure-to-warn claim (to the extent her theory of liability turns on Defendants' alleged obligation to seek FDA approval for a change in label) implicitly seeks to enforce a duty that arises (if at all) under the FDCA and therefore is preempted. Namely, were Brashear claiming that under Ohio law, Defendants had a duty to warn Exparel users about diaphragmatic paralysis *by seeking FDA approval* to add such a warning to its label, she implicitly would be using a state-law tort suit to enforce the FDCA's labeling provisions against Defendants. That regulatory-noncompliance theory of

11

liability cannot exist without the FDCA and its corresponding regulations. And that means the FDCA (along with its implied bar on private enforcement) impliedly preempts any state-law claim relying on it. *Loreto*, 515 F. App'x at 577. In short, Brashear cannot maintain a failure-to-warn claim arising from an allegation that Defendants improperly failed to seek FDA approval for a label change, as the FDCA impliedly preempts such a state-law effort to prosecute regulatory noncompliance.

Brashear cannot rely on the CBE process either. As explained before, (Doc. 19, #169), a manufacturer can employ the CBE process to add a new warning, or to strengthen an existing one, without approval only if the manufacturer receives "newly acquired" safety information. *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 314–15 (2019). Despite claiming in an earlier filing that she could provide new allegations to that effect, (*see* Doc. 22), Brashear has pointed to no *facts* that plausibly suggests such new information exists. True, her Amended Complaint conclusorily *asserts* that Defendants learned of new risks. (Doc. 26 ¶ 21, #201). But that is no more than an unadorned, "formulaic recitation of [one of] the elements of [her] cause of action[, which] will not do." *Iqbal*, 556 U.S. at 678 (citation omitted). She tries to avoid this result by citing a 2018 paper (raised for the first time in her response brief) about the risks of diaphragm injuries associated with shoulder injections (though the paper does not mention Exparel itself). (Doc. 41, #426–27). But Brashear neither references this paper in her Amended Complaint nor explains why such *evidence* is properly before the Court on the motion to dismiss. As explained, subject to only narrow exceptions, none of which apply here, the Court may not

12

consider such outside-the-pleadings evidence at this stage of the litigation. *Armengau*, 7 F. App'x at 343. And that leaves Brashear with only her conclusory assertion that Defendants learned of new risks associated with Exparel. At the risk of undue repetition, such conclusory assertions do not suffice to overcome the Rule 12(b)(6) hurdle, and the claim must be dismissed.[8]

### 2. False Marketing Claim

Brashear's second claim—her false marketing claim—also fails for the reasons the Court previously explained. In the prior Opinion and Order, the Court held that, to the extent Brashear was claiming that the information on the label itself included misrepresentations, such claim was preempted by FDA regulations and the drug approval process. (Doc. 19, #171–72). And the Court further explained that Brashear had failed to allege any misrepresentations *outside* the drug's label, misrepresentations that might not be subject to preemption. (*Id.* at #172).

Brashear's repleaded false marketing claim suffers from the same fatal defect—she cites only representations Defendants made on Exparel's label as the basis for her claim that she was misled into believing that the drug was safe and effective for pain management. (Doc. 26, ¶¶ 30–35, #202–03; Doc. 41, #429 (acknowledging that "[i]n addition to *Exparel's label*, Plaintiff relied on her doctor's

---

[8] The Court also notes that Brashear's claim would not have survived even had her Complaint expressly referenced this paper. The article involves a single patient case study that, as noted above, does not reference Exparel at all—in fact, it mentions a different drug (ropivacaine). (Doc. 41-1, #434). An n=1 case study that does not even clearly apply to the drug in question does not permit of a plausible inference that such a paper constitutes newly acquired information serving as evidence establishing a causal link between *the drug in question* and the alleged risk of harm. *Albrecht*, 587 U.S. at 305 (citing 21 C.F.R. § 314.70(c)(6)(iii)(A)).

13

understanding of Exparel's use and safety")). As the Court already noted, that runs headlong into preemption. The *FDA* has the responsibility for policing labels—not private consumers, and particularly not through state-law tort suits. So Brashear cannot maintain a false marketing cause of action that turns on any (mis)representations in a label the FDA approved under federal laws and regulations. *Yates v. Ortho-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 295 (6th Cir. 2015). Therefore, this claim must be dismissed as preempted.

### 3. Supplier Liability Claim

Last up is Brashear's supplier liability claim, in which she alleges that Defendants negligently permitted Exparel to be used for shoulder surgeries even though the drug "was not safe for those procedures." (Doc. 26 ¶¶ 41–42, #203–04). But that constitutes a "stop-selling" argument based on the perceived dangerousness of Exparel. And the Court concluded that federal drug laws and regulations preempted an argument of that nature. (Doc. 19, #173–74). Nothing in the caselaw has changed on that front since the Court's earlier decision. *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 488 (2013) (rejecting a stop-selling theory as a means to comply with both a state tort law duty of care and the corresponding federal drug laws). As Brashear fails even to address the preemption issue latent in this stop-selling argument, (*see* Doc. 41, #430–31), the Court adheres to its previous determination that Brashear may not challenge the "dangerousness" of Exparel to maintain her supplier liability claim. The claim also must be dismissed as preempted.

14

## CONCLUSION

As explained above, Brashear's second crack at a viable theory in this case fares no better than her first. Though she has satisfied (if barely) her prima facie burden to show that the Court has jurisdiction over PPI and PBI, her Amended Complaint repleads the same state-law tort claims that the Court previously held were preempted, without having cured (or frankly even addressed) any of the defects the Court previously identified. As a result, the Court **GRANTS IN PART** (to the extent they seek dismissal under Rule 12(b)(6)) **AND DENIES IN PART** (to the extent they seek dismissal under Rule 12(b)(2)), PPI's and PBI's Motions to Dismiss (Docs. 35, 36) and **GRANTS** Pacira's Motion to Dismiss (Doc. 34). Moreover, because this is the second time Brashear has failed to clear the Rule 12 hurdle on the merits of her claims, the Court **DISMISSES** the action against all Defendants **WITH PREJUDICE**.

The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

August 19, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**